IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WARREN BLANKENSHIP, )<br>)<br>Defendant. ) | Case No. 8:06CR-386<br><br>REPORT AND RECOMMENDATION |

This case is before the court on defendant Warren Blankenship's Motion to Suppress (#29). The motion was heard on May 22, 2007. The transcript of the hearing (#40) was filed on June 18, 2007, at which time the motion was deemed submitted.

Blankenship moves the court for an order suppressing a Vector Army Model V53 pistol .223 caliber, serial number V0578. Blankenship alleges the pistol was seized during a traffic stop which occurred without probable cause. Blankenship also argues the stop was pretextual, as police had received prior notification from an undisclosed source to be on the outlook for Blankenship and to stop him. Blankenship also alleges he was unlawfully detained after being told he was free to go, and that he never consented to a "full blown search of his vehicle," all in violation of his Fourth Amendment rights under the United States Constitution.

### FACTUAL BACKGROUND

Chad Mertz testified that he has served as a police officer for Aurora, Nebraska since March of 2006. On November 14, 2006 at about 1:40 A.M., while on duty, in uniform and driving a marked cruiser, he observed Blankenship fail to signal a turn onto Madison Avenue and drive left of center, while driving on Highway 14 (8:25-9:13).

Officer Mertz testified that after observing the violations, he activated his emergency lights and stopped the Blankenship vehicle. Mertz approached the driver's side of the vehicle, identified himself, and asked Blankenship to produce his driver's license, insurance, and registration. Officer Mertz then engaged Blankenship in conversation, including questions about his travel itinerary (10:4-19). After receiving Blankenship's paperwork, which included a Nevada license, Officer Mertz asked if Blankenship had any weapons or anything in the vehicle that he needed to be concerned about (11:10-11). Officer Mertz noted that after the question was asked, Blankenship's demeanor changed. Specifically, Officer Mertz noted that Blankenship tightened his grip on the steering wheel and looked down and away (11:12-17). Blankenship responded that there were no weapons in the vehicle.

Officer Mertz asked Blankenship to step out of the vehicle and back to his patrol car while Officer Mertz filled out a warning for the moving violations. Before Blankenship entered the patrol vehicle, Officer Mertz asked if he would mind being patted down for officer safety. Blankenship agreed and Officer Mertz patted him down (12:10-17).

Officer Mertz testified that in the patrol car he had a conversation with Blankenship and told him he was going to issue him a warning for failure to signal a turn and driving left of center (13:9-12). After receiving a radio response from dispatch regarding Blankenship's driver's license and registration, Officer Mertz issued Blankenship the warning and handed him his registration and license (13:17-14:15). Officer Mertz then told Blankenship that one of the things that officers do on the road is look for stolen property, guns, and drugs and he asked Blankenship if he had anything like that in his vehicle. Blankenship responded "no" (14:4-17). Officer Mertz asked Blankenship if he would mind

if Officer Mertz searched the vehicle. Blankenship responded, "yeah, you can if you want" (14:16-21). Officer Mertz then told Blankenship he could either step outside or stay in the vehicle. Blankenship elected to stay in the vehicle (14:21-15:1).

Officer Mertz testified that he exited his patrol vehicle, approached the Blankenship vehicle and began searching (15:12-16) in the back seat area where he observed a soft rifle case containing two barrels for a rifle (16:6-18). As Officer Mertz continued the search he noticed the back seat was not securely fastened, that it wasn't latched or bolted down as it normally would be and the seat was slightly popped up (16:25-17:14). Officer Mertz lifted the back seat and observed an automatic rifle[1] under the seat (17:20-18:1). After finding the weapon, Officer Mertz returned to his patrol car and placed Blankenship under arrest for carrying a concealed firearm (19:8-11). Officer Mertz then continued to search the vehicle.

On cross-examination Officer Mertz testified that he had not received alerts or information to be on the lookout for Blankenship's vehicle or a vehicle with a particular license plate (26:8-11). Officer Mertz admitted that he observed the Blankenship vehicle stop at the stop sign on Madison Street, but again noted that Blankenship did not signal his turn and that while traveling on Highway 14, Blankenship drove left of center by crossing the double yellow line (30:18-31:1).

On cross-examination Officer Mertz admitted the videotape of the stop does not begin when he first observed the Blankenship vehicle, but rather when the vehicle was already stopped (35:6-13). He also admitted that his written report of the incident did not

---

[1] Exhibit 2 includes a photograph of the Vector army Model V53 pistol .223 caliber, serial number V0578, located under the rear seat of the vehicle.

include that Blankenship grabbed the steering wheel real tight (37:22-25), looked down, and that was the only time he looked down during their conversation (38:1-5). Officer Mertz also admitted that he did not include in his affidavit of probable cause for the arrest that the backseat of the Mustang was popped up (43:8-11).

On cross-examination Officer Mertz testified that while he was not sure of the exact time, he believed it was about 15 minutes from the stop of Blankenship's vehicle to the time he found the firearm (38:6-11).

Warren Blankenship testified that he is a 41-year old resident of Las Vegas, Nevada. On November 14, 2006 he was driving through Nebraska when he pulled off the highway at approximately 1:30 A.M. to get gas in Aurora, Nebraska. After gassing his vehicle, checking his radiator coolant, and eating, he exited the station by making a lefthand turn. He immediately noticed the presence of red lights (66:7-14) and pulled over and stopped. He was approached by Officer Mertz who told him he had crossed over and back, but did not mention anything about signals (66:18-23; 67:1-7). Blankenship testified he believed he had signaled the turn (67:8-9).

Blankenship testified Officer Mertz asked for his driver's license, registration, and insurance, which he produced, and Officer Mertz asked him if he had any weapons, bazookas, or whatnots (67:15-16). Officer Mertz took the driver's license and registration and asked about the purpose of Blankenship's trip. Officer Mertz then asked him to step out of the car so that he could be patted down for weapons.

Blankenship testified that after being patted down he was worried why Officer Mertz was inviting him to his vehicle, especially when Officer Mertz had asked questions as though he was joking like, "do you have rocket launchers" (68:11-19).

-4-

Blankenship testified that after ten to twelve minutes of conversation in the patrol car he was given a warning ticket and thought he was free to go (68:21-69:2), when Officer Mertz asked him about searching his vehicle.  Blankenship thought the search was going to be a look through with a flashlight, "like normal cops do in Vegas and Arizona when they look through your car but are not allowed to open glove compartments, rip through all the bags and personal belongings, or go through it, and destroy my chair." (69:8-14). Blankenship testified that what he consented to was a "minute search where Officer Mertz could look through the car" (69:18-21), and that he never gave consent to search the bags, but only to look through the vehicle, "not going through it" (69:20-25).

Blankenship testified that while he heard Officer Mertz testify about the condition of his back seat, that the testimony was not true and when he saw his vehicle after the incident, the whole back seat was ripped up, the bolts were hanging and one of the bolts was missing (71:25-72:5). Blankenship noted that his back seat is fastened with two clips in front with bolts on the frame and that you can lift it up and remove it, but you have to pry it with a special tool (72:14-21).  Blankenship stated that during the search he heard the seat being pried and that he never gave permission to rip out the seats (73:8-74:1).

Blankenship testified that while Officer Mertz searched his vehicle, he did not feel free to leave or to tell Officer Mertz to stop the search, because he feared Officer Mertz might shoot him, "as you don't approach a cop while he's doing something like that, you don't just walk up to them when you've got cops in your car without permission" (78:13-19).

## LEGAL ANALYSIS

### A. Legality of Traffic Stop

"For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest." *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001); *see United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001), *cert. denied*, 537 U.S. 850 (2002). As such, a traffic stop is governed by the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). *Jones*, 269 F.3d at 924. Under *Terry,* 392 U.S. at 21-22, a police officer may conduct an investigative stop if the officer has a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. *See also Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Reasonable suspicion requires a particularized and objective basis for suspecting the person stopped of criminal activity, but the level of suspicion required for a *Terry* stop is less demanding than that for probable cause. *United States v. Gonzalez*, 220 F.3d 922, 925 (8th Cir. 2000) (internal quotations and citations omitted). "A reasonable suspicion may be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality." *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998). Even "[a] mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it." *United States v. Ornelas-Ledesma*, 16 F.3d 714, 718 (7th Cir. 1994), *judgment vacated on other grounds*, 517 U.S. 690 (1996) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184-86 (1990)); *accord United States v. Bailey*, 417 F.3d 873, 977 (8th Cir. 2005), *cert. denied*, 547 U.S. 1104 (2006); *see also United States v. DeLeon-Reyna*, 930 F.2d 396, 399 (5th Cir. 1991) (en banc) (per curiam); and *United States v. Walraven*, 892 F.2d 972, 974-75 (10th Cir. 1989)).

In this case, Officer Mertz testified that he stopped Blankenship's vehicle because he observed two violations–failure to signal a turn and driving left of center. The videotape (Ex. 1) verifies Officer Mertz's in-court testimony and nothing on the videotape contradicts his testimony. The videotape (Ex. 1) also reveals, contrary to Blankenship's testimony, that Officer Mertz did inform him of both of the traffic violations. I find Officer Mertz to be credible and I further find that his stopping Blankenship's vehicle for traffic violations was objectively reasonable.

Blankenship also alleges the stop was pretextual as it was based on prior notification to the police. No evidence exists in this case that any prior notification existed; however, if it did exist, an officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003). "This is true even if a valid traffic stop is a pretext for other investigation." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *see Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that an officer's subjective intentions for conducting a traffic stop "play no role in ordinary, probable-cause Fourth Amendment analysis"). As long as an officer "objectively has a reasonable basis for believing that the driver has breached a traffic law," the officer has probable cause to conduct a traffic stop. *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996).

### B. Scope and Duration of the Traffic Stop

Having made a valid traffic stop, an officer is allowed to detain the occupants of the vehicle while completing "a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning."

*United States v. $404,905.00 in United States Currency*, 182 F.3d 643, 647 (8th Cir. 1999), *cert. denied*, 528 U.S. 1161 (2000); *see also United States v. Barragan*, 379 F.3d 524, 528-29 (8th Cir. 2004).  "During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered." *United States v. $404,905*, 182 F.3d at 643; *see also United States v. White*, 81 F.3d 775, 778 (8th Cir.), *cert. denied*, 519 U.S. 1011 (1996); *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994), *cert. denied*, 514 U.S. 1134 (1995).  "'An officer may also question a vehicle's passengers to verify information provided by the driver, and conflicting stories may provide justification to expand the scope of the stop and detain the occupants.'" *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2004) (quoting *United States v. Barragan*, 379 F.3d at 529); *see also United States v. Williams*, 431 F.3d 296 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 2912 (2006).

While I find Officer Mertz to be credible, the best evidence of what happened following the stop is the videotape (Ex. 1).  A review of the videotape will show the following:

- 35:00   The Blankenship vehicle is stopped by Officer Mertz.

- 36:10   Officer Mertz approaches the vehicle and informs Blankenship that he has been stopped for failure to signal a turn and driving left of center.

- 36:25   Blankenship admits to driving left of center, telling Officer Mertz he was looking at his GPS and "that's what happens, I'm sorry."

- 37:30   Officer Mertz asks Blankenship if he has any weapons, grenades, or rocket launchers in his vehicle.  Blankenship responds that he does not.

| | |
|---|---|
| 37:42 | Officer Mertz asks Blankenship to step out of his vehicle. |
| 38:15 | Officer Mertz asks Blankenship if he can pat him down for safety reasons before Blankenship is placed in the police cruiser. Blankenship agrees. |
| 38:30 | Officer Mertz and Blankenship have a conversation in the cruiser. |
| 46:50 | Officer Mertz returns Blankenship's license and registration to him and issues him a warning ticket. |
| 47:30 | Officer Mertz requests consent to search the Blankenship vehicle and consent is given. |
| 47:43 | Blankenship tells Officer Mertz that he has a gun or gun parts in the vehicle. |
| 47:44 | Officer Mertz informs Blankenship the search will "only take me a minute." |
| 48:00-51:00 | After searching inside the vehicle, Officer Mertz returns to his cruiser and asks Blankenship about the presence of firearm barrels and asks if there are any other weapons. Officer Mertz returns to the Blankenship vehicle and continues to search. |
| 58:20 | The automatic weapon found in the Blankenship vehicle is placed on the hood of the police cruiser. |

The videotape (Ex. 1) also reveals that the routine tasks were accomplished in 12 minutes, after which Officer Mertz returned Blankenship's documents and asked for permission to search.

I find that Blankenship was no longer "seized" within the meaning of the Fourth Amendment after Officer Mertz returned his documents, and a reasonable person in Blankenship's position at the time he was asked for permission to search would "feel free to terminate the encounter and be on his way." Officer Mertz did not somehow re-seize Blankenship by asking him additional questions or by requesting his consent to search.

*See United States v. Morgan*, 270 F.3d 625, 630 (8th Cir. 2001), *cert. denied*, 537 U.S. 849 (2002). Nothing in the record suggests that Officer Mertz acted in such a way that a reasonable person would believe that he was not free to decline the request for further conversation or terminate the encounter altogether. *See id.* Thus, I find that the traffic stop of less than 12 minutes was not unlawfully expanded, and that the subsequent contact between Blankenship and Officer Mertz was consensual. *See, e.g., United States v. White*, 81 F.3d at 779 (after defendant's license and registration were returned and the warning was issued, the encounter "became nothing more than a consensual encounter between a private citizen and a law enforcement officer"); *United States v. Santos-Garcia*, 313 F.3d 1073, 1078 (8th Cir. 2002) (defendant was no longer seized within the meaning of the Fourth Amendment after officer returned his identification and issued a warning ticket).

**C.  Search of the Vehicle.**

Police may conduct a search of someone's vehicle, home or person even without a warrant or probable cause if that person voluntarily consents to the search. *See, e.g., United States v. Bradley*, 234 F.3d 363, 366 (8th Cir. 2000); *United States v. Deanda*, 73 F.3d 825 (8th Cir. 1996). To determine whether such a consent was voluntary, the court must examine the totality of the circumstances, including the characteristics of the accused and the nature of the encounter. *See Bradley*, 234 F.3d at 366. The government has the burden of proving consent was voluntary. *United States v. Parris*, 17 F.3d 227, 229 (8th Cir.), *cert. denied*, 511 U.S. 1077 (1994); *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir.), *cert. denied*, 516 U.S. 892 (1995). "The prosecution need not prove that the individual was fully aware of his or her rights under the Fourth Amendment in order to

establish a voluntary consent." *Heath*, 58 F.3d at 1275 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973)). "Consent is voluntary 'if it was the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied.'" *United States v. Fleck*, 413 F.3d 883 (8th Cir. 2005) (quoting *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990)).

The recorded conversation (Ex. 1) between Officer Mertz and Blankenship corroborates Officer Mertz's testimony and memorializes Blankenship's verbal consent to search. The recorded conversation also shows that Blankenship was very talkative and initiated a great deal of the conversation. The consent was not limited in any fashion, was not retracted, and was not the result of any threat, promise, or inducement.

Considering the *Chaidez* factors[2] in conjunction with the videotape and the hearing testimony, I find that Blankenship voluntarily consented to the search of his vehicle.

---

[2] Courts in the Eighth Circuit generally consider the "*Chaidez* factors" to determine if consent was voluntary:
"Characteristics of persons giving consent" which may be relevant to the question include:
  (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.
*Id.* at 381 (internal citations omitted). Characteristics of "the environment in which consent was given" include:
  whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.
*Id.* (internal citations omitted). The factors should not be applied mechanically, *id.*, and no single factor is dispositive or controlling. *United States v. Ponce*, 8 F.3d 989, 997 (5th Cir.1993).
*United States v. Bradley*, 234 F.3d at 366.

## RECOMMENDATION

In summary, I find Officer Mertz acted reasonably in stopping Blankenship's vehicle. The traffic stop itself was completed in a reasonable amount of time (12 minutes) and Blankenship's subsequent contact and consent to search were consensual. The scope of the traffic stop was not unlawfully expanded. Blankenship voluntarily consented to the search of his vehicle and his consent was not limited in scope, nor was the consent ever modified or withdrawn.

For these reasons,

**IT IS RECOMMENDED** that defendant's MOTION TO SUPPRESS (#29) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED July 13, 2007.**

                                          **BY THE COURT:**

                                          **s/ F.A. Gossett**
                                          **United States Magistrate Judge**